IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,　　　　　　　　　　　　No. CR. S-11-0537 LKK

    vs.

TROY STRATOS,

    Defendant.　　　　　　　　　　　　ORDER
_____/

    The defendant was arrested and made an initial appearance before a magistrate judge in the Central District of California on December 20, 2011. The government moved for detention and further proceedings were held on December 21, 2011. After hearing, the defendant was ordered detained and transported to this district. Order filed December 22, 2011, Dckt. No. 8 (citing the nature of the offenses, the defendant's prior extended international travel and insufficient bail resources). The defendant's initial appearance in this district occurred on January 11, 2012, at which time he was informed of his rights, the nature of the charges and the potential penalties. Further arraignment was put over to January 12 so that his retained counsel could be present.

    The defendant was arraigned on January 12, 2012, at which time he sought release on conditions and the government continued to argue for detention. A detention hearing was held,

1

and at defense counsel's request a further hearing on detention, including an evidentiary hearing, was set for January 13, 2012.

At the January 13 hearing, the court noted its initial impression, indicating that it was bothered by the details of the arrest, as communicated to the Pretrial Services Office in Los Angeles, indicating that the defendant was hiding to avoid arrest. The court also expressed concern over the defendant's extensive and prolonged travel (living in several locations in Europe, the middle east and Canada for over three and a half years). The court also indicated its strong concern over the information in the Pretrial Services report that the defendant was in receipt of over $10 million of a Canadian citizen's money with no accounting of the whereabouts of those funds. Additionally, the court expressed concerns over the defendant's lack of candor with the Pretrial Services Officers regarding the identification of assets, and the lack of strong ties to the persons who were offering to post collateral.

The defendant presented the testimony of Viive Truu, who testified that she lent the defendant either $10.5 or $11 million; she was unsure of the exact amount. She was clear that these funds were not a gift but rather a loan and that the defendant was to pay 6% interest on the principal. Although she is a resident of Canada, she purports to know the defendant well and trusts him, and she does not think he would be a flight risk.[1] She volunteered that she did wonder about his credibility, and, indeed, his true identity, during a period of time he was incarcerated in France for an alleged fraud, but she now believes his representations. She testified that defendant was about to make a $1 million payment to her the week he was arrested in December of 2011, but was unable to do so because of the arrest.[2] She said they had

---

[1] Significantly, to date defendant has made only two payments over several years, one for $250,000 and another for $225,000.

[2] Defendant's representation to the Pretrial Services Officer in Los Angeles was that he had only a checking account with a balance of $50,000. He represented to the Sacramento Pretrial Services Officer that he has no personal savings or checking accounts, but that his living expenses were paid out of an account he refers to as Soumaya Securities, LLC. The Pretrial

2

previously been negotiating over how to get the loan paid prior to his incarceration in Paris, and that arrest, too, interrupted those negotiations.

The defendant, after having been informed of his right to remain silent and with the consent of his retained counsel as stated on the record, requested to make a statement and his sworn testimony was taken over a two day evidentiary hearing.[3] Defendant stated that he was not avoiding arrest when he was found in the closet but rather had been ill and was simply trying to get dressed. He explained that his witness, Ms. Truu may have been mistaken as to some particulars but provided no specifics.

The defendant stated that, if released, he intends to pursue closure of a Facebook stock or securities transaction involving several million dollars in which claims that he is the finder for buyers and unnamed sellers [4] The buyer(s) has deposited large sums of money with the defendant and, defendant testified, he needs to close that deal. He also stated that he would be very transparent in his dealings in that regard. However, cross-examination of the defendant demonstrated the opposite. He was questioned about text messages to the purported buyer that the defendant recently dictated from the jail. The text message included the false representation that the message was from a person named Ken Dennis, rather than the defendant, Troy Stratos. He was also questioned about a representation in the text messages that the reason the Facebook deal has not moved forward is because the defendant is currently traveling. Rather than denying the false representation, the defendant insisted that the misrepresentation was irrelevant because Mr. Dennis is the CEO of Soumaya Securities, LLC. When reminded that he has just previously

---

Services Officer learned from his accountant that the defendant has $32,000 in this account.

[3] The evidentiary hearing commenced on Friday, January 13, 2011. Due to the unavailability of defense counsel, who was in trial the following week in Los Angeles, the hearing resumed on Monday, January 23, 2011.

[4] When pressed to name the sellers, defendant gave expansive, non-responsive answers that simply obfuscated. He gave lengthy assurances that he was willing to be fully transparent, but with the exception of a single name of a person who defendant says he now believes may no longer be willing to sell, the defendant failed to identify the sellers.

3

testified that Soumaya Securities, LLC had no officers or employees other than the defendant, he provided a lengthy and largely non-responsive explanation that obfuscated rather than clarified, and certainly did not demonstrate a willingness or ability to be candid, transparent and cooperative with pretrial release conditions pertaining to financial transactions or communications with victims of fraud.

Given the large sums of other people's money that have come into the defendant's possession, and the apparent ease with which that has occurred, the nature of the allegations in the indictment, the troubling testimony regarding Ms. Truu's funds and the recent representation to Ms. Truu that, but for the defendant's recent arrest, she would have received in December a payment of $1 million of the approximately $11 million she is owed, the recent lie defendant communicated in the alleged multi-million dollar Facebook stock deal the defendant is attempting to close from the jail, and the defendant's evasive and contradictory answers on cross-examination, I find by clear and convincing evidence that there presently is no condition or combination of conditions that will protect the victims and intended victims from continued fraudulent representations and transactions by the defendant.

I further find, by a preponderance of the evidence, that there is no current credible release plan proposed that would include conditions or a combination of conditions that will mitigate flight risk and reasonably assure the appearance of the defendant. The defendant's step-mother, Ms. Wilson, informed pretrial services that she would be willing to post some of the equity of rental property she owns for a secured bail bond. However, she indicated that she would not be willing to post her primary residence because "it was her home and it was paid for." January 12, 2012 Pretrial Services Suppl. Bail Mem. at 4 - 5. As for the rental property, she initially stated that she would only be willing to post $100,000 of the approximately $430,000 of available

////

////

////

4

equity, but then on reconsideration raised the amount to $200,000.[5] *Id.* Moreover, the report indicates that when the Pretrial Services Officer looked up the property she noticed that it was for sale. *Id.* at 4.

As for the primary residence, the explanation for Ms. Wilson's unwillingness to post it has changed. Notwithstanding the prior representation to the Pretrial Services Officer that the home was "paid for", counsel represented at the evidentiary hearing that Ms. Wilson now has recently learned that the home had no equity. No explanation was offered for the prior statement, whether it was truthful when made, and if the property had equity where it went. Regardless of the changed representation, Ms. Wilson, the one individual offering to post property for whom the defendant appears to have close ties, initially indicated that she did not trust the defendant enough to risk her home on his future appearances. Given the inconsistent reasons stated for the motive of Ms. Wilson not to risk her home as collateral for a bond, and the uncertain or apparent lack of accurate information to date on the encumbered or non-encumbered status of that property, it appears that there is little, if any, significant assets from the one person with significant ties to the defendant being offering to post property to mitigate the risk of flight. The equity from the rental property that was, but apparently is not now, up for sale simply loses any significance in light of the amount of funds that defendant, by his own admission, has obtained from others and has not accounted for.

The defendant also proposed $59,000 in equity from the home of a Mr. Johnson. Mr. Johnson has only known the defendant for two years and does not appear to have ties to the defendant that would result in any genuine consequences to the defendant if that equity were lost due to the defendant's non-appearance. This is of particular concern given nature of the charged offense, as well as how casually the defendant has acquired and not accounted for millions of dollars belonging to Ms. Truu, who he as known for a much longer period of time. The concern

---

[5] As the Pretrial Services report explains, if the defendant were to flee, Ms. Wilson would not lose the rental property but would "just lose the equity."

5

is exacerbated by the defendant's testimony that he received (and cannot account for) many more millions of dollars on his claimed Facebook deal that he says he wants to complete.

Finally, the three vehicles offered as security (an Audi R8, a Range Rover, and a Camaro) do not significantly change the analysis given the sizable sums of money that have not been accounted for.

In light of defendant's three and one half years of living in other countries, the large sums of funds that are currently not accounted for, and the defendant's evasive testimony at the evidentiary hearing, there currently does not appear to be a condition or combination of conditions that will reasonably assure the appearance of the defendant.

For these reasons, and the reasons stated at the hearing, the defendant's request for release on conditions is denied. As stated at the hearing, the denial is without prejudice to a bail review motion that the defendant might present showing either changed circumstances or new evidence as to flight risk and danger to other potential victims.

DATED: January 31, 2012

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE